UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TIMOTHY NATHANIEL ALLEN,

    Petitioner,

    v.

GREG LEWIS,

    Respondent.

Case No. 11-cv-04441-WHO (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Timothy Allen seeks federal habeas relief from his state convictions. For the reasons set forth below, the petition for such relief is DENIED.

## BACKGROUND

In 2008, an Alameda County Superior Court jury found Allen guilty of first degree murder. Evidence presented at trial showed that in 2003, Allen drove a car from which Jamal Everett and Stephen Bell shot Jose Roberto, killing him. (Ans., Ex. 7 at 7–8 (State Appellate Opinion), *People v. Allen*, No. A123238, 2010 WL 695585 (Cal. Court. App. Feb. 25, 2010) (unpublished).) Allen received a sentence of life in prison without the possibility of parole. He appealed, lost, sought a state writ of habeas corpus, and lost again. This federal habeas petition followed.

As grounds for federal habeas relief, Allen alleges that (1) statements he made to police were admitted in violation of *Miranda v. Arizona*[1]; (2) the admission of unrecorded statements he made to police violated his right to due process; (3) the giving of a jury instruction violated his right to due process; (4) there was cumulative error; (5) the length of his sentence violated his rights to due process, equal protection, and to be free from cruel and unusual punishment; and (6) trial and appellate counsel rendered ineffective assistance.

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at

---

[1] *Miranda v. Arizona*, 384 U.S. 376 (1966).

413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state-court decision is objectively reasonable. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This "[i]ndependent review is not a *de novo* review of the constitutional issue, but rather, the only method by which [a federal court] can determine whether a silent state court decision is objectively unreasonable." *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

## DISCUSSION

### I. Admission of Statements to Police

Allen claims that (A) statements he made to police were inadmissible because he had not been given his *Miranda* warnings prior to making them and (B) unrecorded statements made after being given his *Miranda* warnings were inadmissible because of a violation of his Fifth Amendment and due process rights.

Here are the relevant facts regarding these statements. In June, 2004, Allen was taken to jail in connection with a car theft. The Oakland Police Department had a practice of randomly asking new inmates whether they had any information on crimes. Allen volunteered that he had information regarding the killing of Roberto. The police assumed that Allen was an uninvolved informant or a witness to the crime regarding Roberto, not a

3

1  participant in it, and did not Mirandize him prior to questioning. (Ans., Ex. 7 at 3.)

2  Pursuant to police policy, Allen was first interviewed without a recording device,
3  then asked to repeat his statement while being recorded. During the initial, unrecorded
4  interview that morning, Allen stated that Jamal and Dave Everett, who were armed, asked
5  Allen and their friend Stephen Bell whether Allen and Bell wanted to ride with them in a
6  car Allen had stolen that day. According to Allen, the Everetts said that they were going to
7  "handle" an issue with a group from School Street with which they were having problems.
8  (*Id*. at 4.) Allen stated that neither he nor Bell got into the car with the Everetts but that he
9  did hear shots coming from the direction of School Street after the pair had driven off.
10 (*Id.*)

11  After a break in the interview, the police told Allen, who was still not Mirandized,
12 that they knew that more than two persons were in the car during the shooting. They asked
13 him to tell the truth about his involvement. He repeated his assertion that his criminal
14 participation was limited to providing the vehicle. He then made a recorded statement to
15 the police, which was consistent with his unrecorded statement. When asked to clarify
16 what the Everett brothers meant by "handle" the situation on School Street, Allen
17 answered, "I guess . . . go shoot up School Street, [or] somethin[g]." (*Id*. at 5.) He stated
18 during the interview that when shown a newspaper story about the shooting, Jamal Everett
19 said to Allen, "Yeah, yeah. We be some killers." (*Id.*)

20  After Allen's morning statements, the police arrested Bell and Jamal Everett.[2] Once
21 the police interviewed Bell, they concluded that Allen should be considered a suspect. He
22 was brought to the police station and Mirandized. When Allen was shown Bell's and
23 Everett's names on the interview room door and was asked to tell the truth, he immediately
24 confessed that he was the driver of the car. (*Id*. at 6).

25  Allen was re-interviewed. During the unrecorded evening statement, Allen

---

[2] Although Allen alleged at times that David Everett was directly involved in the shooting, he later laid blame only on Jamal Everett and Bell. (Ans., Ex. 7 at 7.) David Everett was never charged with any crimes in connection with the murder of Roberto. (*Id*. at 9.)

4

explained that he was the driver but denied knowing Bell or Everett was going to shoot anybody. (*Id.*) According to police testimony at trial, Allen made a statement during the unrecorded portion of the interview to the effect that he was startled by the shooting, as it was "before they [were] supposed to shoot." (*Id.* at 7). The recorded version was similar to the unrecorded version, although his statements about being startled at the gun shots did not imply any knowledge that Bell or Everett would be firing at people on School Street. (*Id.* at 8).

At trial, Allen moved to suppress his pretrial statements owing to the lack of *Miranda* warnings. At the evidentiary hearing, the officer who interviewed Allen testified that he did not Mirandize him before the morning session because he "had no indication at all that would lead him to believe [Allen] was involved in the killing." (*Id.* at 10). The motion to suppress was denied and the unrecorded and recorded morning and evening statements were admitted as evidence.

A person subjected to custodial interrogation must be advised that he has the right to remain silent, that statements he makes can be used against him, that he has the right to counsel, and that he has the right to have counsel appointed. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). These warnings must precede any custodial interrogation, which occurs whenever law enforcement officers question a person after taking that person into custody or otherwise significantly deprive a person of freedom of action. *Id.* The remedy for a violation of these requirements is the suppression, at the subsequent trial, of the statements made incriminating the defendant in the crime about which he was questioned. *Id.* at 479. "[I]nterrogation means questioning or 'its functional equivalent,' including 'words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.'" *Pope v. Zenon*, 69 F.3d 1018, 1023 (9th Cir. 1995) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)) (confronting suspect with incriminating evidence linking him to crime plus pre-*Miranda* advisement interrogation violated *Miranda* and not cured

by later defective *Miranda* advisement), *overruled on other grounds by United States v. Orso*, 266 F.3d 1030 (9th Cir. 2001).

However, *Miranda* protections are triggered "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). Whether a person is in "custody or otherwise deprived of his freedom of action in any significant way," *Miranda*, 384 U.S. at 444, is answered by reviewing the totality of facts involved at the time of the alleged restraint. *U.S. v. Redlightning*, 624 F.3d 1090, 1103 (9th Cir. 2010) (citing *U.S. v. Hayden*, 260 F.3d 1062, 1066 (9th Cir. 2001)). Relevant to this inquiry are (1) the language used by the officer to summon the individual, (2) the extent to which he or she is confronted with evidence of guilt, (3) the physical circumstances of the interrogation, (4) the duration of the detention and (5) the degree of pressure applied to detain the individual. *Id.* Incarceration alone is not sufficient to constitute custody in the *Miranda* context. The Supreme Court has "repeatedly declined to adopt any categorical rule with respect to whether the questioning of a prison inmate is custodial." *Howes v. Field*, 132 S. Ct. 1181, 1187 (2012).

### A.     Recorded Statements

The state appellate court found "no error in the trial court's conclusion that *Miranda* warnings were not required in connection with the interviews that generated appellant's morning statements to the police":

> [Allen] was not summoned for questioning, nor was any pressure exerted in connection with his detention. Rather, [Allen] volunteered to give information about the killing of Roberto, apparently in the hope of leniency regarding the car theft for which he had been jailed. He was interrogated in an interview room in the police station, a brief walk from the jail, and was not handcuffed or otherwise subjected to greater confinement than was inherent in his being in jail to begin with. He was not confronted with any evidence of his guilt, because the police were not in possession of any such evidence. On the contrary, [Officer] Green treated [Allen] during the interview in a manner entirely consistent with his belief that [Allen] was only a witness, rather than a suspect, in Roberto's killing.

(Ans., Ex. 7 at 13) (footnotes omitted).

The state appellate court's determination was reasonable. Even assuming that the first statement Allen made was during an "interrogation," it was reasonable for the state court to deny this claim. Allen was not summoned by a police officer, but rather volunteered information about a crime unrelated to the stolen car charge which brought him to prison in the first place. The officers did not confront him with any evidence of guilt, or apply any pressure to him; to the contrary, Allen was treated simply as a witness. Allen was taken from the jail to the police station interrogation room, which was only a "brief walk" away, and was neither handcuffed nor restricted in any way greater than he already was. (*Id.* at 13.) The entire interview lasted a little over an hour, and included a bathroom break. (*Id*. at 10.) It would be reasonable for a court to conclude that Allen was not in "custody" for *Miranda* purposes, and that his statements should not have been excluded. Habeas relief is not warranted on this basis. The state appellate court's decision was reasonable, and is therefore entitled to AEDPA deference. This claim is DENIED.

### B.     Unrecorded Statements

Allen claims that the trial court should not have admitted the unrecorded portion of his interviews. Allowing the jury to merely guess which "paraphrased version" of his comments about being startled by the shots violated the Fifth and Fourteenth amendments. (Pet., Ex. A at 33.) Due process, however, does not require electronic recording of interrogations. *United States v. Smith-Baltiher*, 424 F.3d 913, 925-26 (9th Cir. 2005). Also, any showing of prejudice is doomed by the admissions Allen made in the recordings. He admitted that he knew that Bell and Everett were going to commit gang violence, that they were armed with guns, and that he acted on their instructions to drive, slow down, and drive off after they had emptied their guns. (Ans., Ex. 1 at 634-38, 661, 664-667, 682-83.) The state appellate court's decision was reasonable, and is therefore entitled to AEDPA deference. This claim is DENIED.

## II. Jury Instructions Regarding Special Circumstances

Allen contends that the jury instructions given for the drive-by shooting special circumstance and first degree murder, CALJIC No. 8.81.21 and CALJIC No. 8.25.1, lessened the state's burden of proving an element of a crime in violation of his Fourteenth Amendment due process rights.

The trial court gave CALJIC No. 8.81.21, a jury instruction on drive-by shooting special circumstances, which reads:

> To find that the special circumstance referred to in these instructions as a murder by means of an intentional discharge of a firearm from a motor vehicle is true, it must be proved (1) The murder was perpetrated by means of discharging a firearm from a motor vehicle; (2) The **perpetrator** intentionally discharged the firearm at another person or persons outside the vehicle; and (3) The **perpetrator**, at the time he discharged the firearm, specifically intended to inflict death.

(emphasis added). Allen claims that by referring only to "perpetrator," these instructions did not make it clear to the jury that they had to find he (Allen) had intent to kill, along with the person who actually fired the gun. (Pet., Ex. A at 39.) Allen also argues that the introductory instructions did not cure this defect, as those instructions state that he could be found guilty if he aided or abetted "any actor" in the commission of murder. Since Jamal's shots killed Roberto, while Bell's shots missed, Allen argues that if he only intended to aid Bell but not Jamal, he did not intend to assist "the perpetrator." (*Id.*)

Allen also claims that the first degree murder charge instruction, CALJIC No. 8.25.1, was defective. It reads:

> Murder which is perpetrated by means of discharging a firearm from a motor vehicle intentionally at another person outside the vehicle when the **perpetrator** specifically intended to inflict death, is murder of the first degree. The essential elements of drive-by murder are:
>
> 1. The **defendant** committed the crime of murder;
> 2. The **defendant** perpetrated the crime of murder by means of discharging a firearm from a motor vehicle intentionally at another person outside the vehicle; and

8

> 3. The **defendant** specifically intended to kill a human being.

(emphasis added). Allen claims that there was no evidence a jury could use to find that he, as the defendant, actually perpetrated the murder by firing a gun from a motor vehicle intentionally at another person. Allen argues that the aiding and abetting instructions did not cure this defect, as they refer to aiding a "perpetrator," while the murder instructions refer to the defendant. (Pet., Ex. A at 40–41).

The state appellate court concluded that the instructions were not reasonably susceptible to Allen's interpretation, especially in light of the particular facts of the case and the other instructions given:

> In the present case, the prosecutor pointed out to the jury that, it first had to decide whether [Allen] was guilty of first degree murder, and then, in order to decide whether the special circumstance allegation had been proven, 'you need to decide if this has been proven: [t]hat Jose Roberto was murdered [by] means of discharging a firearm from a motor vehicle; that Jamal Everett intentionally discharged the firearm at another person or persons outside the vehicle; and that at the time of the shooting, the perpetrator specifically intended to inflict death.' In addition, she explained that because [Allen] was not the actual killer, in order for the jury to find the special circumstance, it had to find 'that [Allen] acted with the intent to kill as an aider and abettor. So . . . that he, [Allen], had the intent to kill and that he aided and abetted . . . the crime of drive-by murder.'
>
> In the present case, given the evidence, the overall jury instructions, and the prosecutor's closing argument, we do not think it is reasonably likely that the jury could have concluded that [Allen] intended to help *Bell* kill someone at School Street, but did not intend to help *Jamal Everett* do so. [Allen] stole the car for use by both of the other men, knew that both of them were armed, and slowed the car based on instructions from both of them when they caught sight of Roberto's group. Under the circumstances, we do not believe any reasonable juror could have convicted [Allen] based on the hypothetical incorrect theory suggested in [Allen]'s brief.
>
> [Allen] also contends that the jury could have been confused by the use of 'defendant' instead of 'perpetrator' in CALJIC No. 8.25.1, the instruction on drive-by murder as a basis for first degree murder. As [Allen] correctly points out, there was no evidence in this case that the 'defendant,' i.e., [Allen], actually committed the drive-by shooting. Again, however, any potential confusion on this score was dispelled by the prosecutor's closing argument, in which she made clear that in order to

9

>find [Allen] guilty of first degree murder, the jury had to find that 'as an aider and abettor, he aided and abetted a principal, and the principal . . . [m]urdered by shooting a firearm from a motor vehicle.' She went on to explain that '[t]he principal, *namely Jamal Everett*' (italics added), had to have '[i]ntentionally shot at a person who was outside the vehicle . . . and . . . intended to kill that person,' and that [Allen] had to have 'shared the intent . . . ' Thus, in the context of the instructions as a whole, the evidence, and the arguments of counsel, it is not reasonably possible that the jury misunderstood the use of the word 'defendant' in CALJIC No. 8.25.1. Accordingly, we find no reversible error in the challenged instructions.

(Ans., Ex. 7 at 20-21.)

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the allegedly defective instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id*. at 72. In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. *United States v. Frady*, 456 U.S. 152, 169 (1982) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)). In reviewing an ambiguous instruction, the inquiry is not how reasonable jurors could or would have understood the instruction as a whole; rather, the court must inquire whether there is a "reasonable likelihood" that the jury has applied the challenged instruction in a way that violates the Constitution. *See McGuire*, 502 U.S. at 72.

A determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred. *See Calderon v. Coleman*, 525 U.S. 141, 146 (1998). If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict, *see Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), before granting relief in habeas proceedings. *See Calderon*, 525 U.S. at 146–47.

A jury instruction that omits an element of an offense is constitutional error subject to "harmless error" analysis. *See Neder v. United States*, 527 U.S. 1, 8-11 (1999). Harmless error applies whether the error is characterized as a misdescription of an element

of an offense in a jury instruction, or as an omission of the element. *See California v. Roy*, 519 U.S. 2, 5 (1996) (omission of "intent" element from aiding and abetting instruction subject to harmless error analysis where jury could have found intent based on evidence it considered).

Habeas relief is not warranted here. The state court's interpretation of fact and the law was reasonable. Regarding CALJIC No. 8.81.21 (drive-by special circumstances), it is unlikely that any jury could find that the driver of a car intended for one passenger to kill, but not the other, especially when Allen was aware both men were armed with pistols. Furthermore, the prosecutor's closing argument made it very clear that the jury needed to find that Allen himself had intent to kill, and that he aided and abetted the crime of drive-by murder. A jury, viewing these instructions in the context of all other instructions and the prosecutor's closing argument, would not have used these instructions unconstitutionally.

Regarding CALJIC No. 8.25.1 (first degree murder), the state court rightly found that any possible confusion caused by the instruction's use of "defendant" rather than "perpetrator" was cleared up when viewed in the context of the instructions as a whole and by the prosecutor's closing statement. The prosecutor's closing statement made it clear to the jury that in order to find Allen guilty, they needed to find that he aided and abetted a "principal" who murdered Roberto by shooting a gun from a motor vehicle, and that Allen had to share Jamal Everett's intent to kill. The use of the term "perpetrator" as opposed to "defendant" in the aiding and abetting instructions would not have confused the jury so much that they would have used the instructions unconstitutionally.

Even assuming that there is a reasonable likelihood the jury applied these instructions in an unconstitutional manner, it is reasonable for a court to find that the error was harmless in light of other evidence of Allen's intent, such as his own testimony about "handling" the problem with the School Street group. Habeas relief is therefore not warranted on this claim.

## III.  Cumulative Error

Petitioner claims that even if the errors individually do not justify relief, the cumulative effect of all errors resulted in a fundamentally unfair trial.  In some cases, although no single trial error is sufficiently prejudicial to warrant reversal, the cumulative effect of several errors may still prejudice a defendant so much that his conviction must be overturned.  *See Alcala v. Woodford*, 334 F.3d 862, 893-95 (9th Cir. 2003). Where there is no single constitutional error existing, however, nothing can accumulate to the level of a constitutional violation.  *See Mancuso v. Olivarez*, 292 F.3d 939, 957 (9th Cir. 2002).  As Allen has not shown any errors, there can be no cumulative error.  Accordingly, this claim is DENIED.

## IV.  Sentencing

Allen claims that his due process and Eight Amendment rights were violated when he, the unarmed driver of the car, received a life sentence without parole, while the two shooters, Bell and Jamal Everett, were sentenced to thirteen (13) and forty (40) years to life, respectively.  (Pet., Ex. A at 45.)  Jamal Everett's case was severed from that of Allen's and Bell's, and he was convicted of second, rather than first, degree murder.  (Ans., Ex 7 at 9 n.8.)  Bell pleaded no contest to voluntary manslaughter after Allen's trial, but before sentencing, in exchange for a 12 year sentence.  (*Id.*)  The state appellate court rejected Allen's claim.  (*Id.* at 22-23.)

A criminal sentence that is not proportionate to the crime for which the defendant was convicted violates the Eighth Amendment.  *Solem v. Helm*, 463 U.S. 277, 303 (1983). Yet successful challenges to the proportionality of particular sentences are "exceedingly rare" outside "the context of capital punishment."  *Id.* at 289-90.  Eighth Amendment jurisprudence "gives legislatures broad discretion to fashion a sentence that fits within the scope of the proportionality principle --- the precise contours of which are unclear." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003) (internal quotations and citations omitted). "The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to

the crime." *Ewing v. California*, 538 U.S. 11, 23 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring)).  Where it cannot be said as a threshold matter that the crime committed and the sentence imposed are grossly disproportionate, it is not appropriate to engage in a comparative analysis of the sentence received by the defendant to those received by other defendants for other crimes.  *See United States v. Harris*, 154 F.3d 1082, 1084 (9th Cir. 1998).

The Supreme Court upheld a life sentence without the possibility of parole for an offender whose sole felony conviction was for possessing 672 grams of cocaine. *Harmelin*, 501 U.S. at 995, 961.  In *Andrade*, the Supreme Court, under the highly deferential AEDPA standard, upheld a sentence of two consecutive 25 year terms for the nonviolent theft of $150 worth of videotapes.  538 U.S. at 77.

Habeas relief is not warranted because there was no Eighth Amendment violation. The jury found that Allen had the intent to kill and drove the car from which the gunmen shot and killed Roberto.  If, as in *Harmelin*, a life sentence for a single nonviolent drug possession conviction did not violate the Eighth Amendment, then petitioner's sentence for aiding in the commission of a murder also cannot.

Allen's contention that it is unconstitutional that he received a higher sentence than the actual shooters is unavailing.  There is no clearly established Supreme Court precedent in favor of his argument, and what precedent there is supports the contrary proposition. *See California v. Beheler*, 463 U.S. 1121, 1125 n.3 (1983) (The Court found unpersuasive the contention that it was unjust to uphold defendant's conviction for aiding and abetting first-degree murder when the triggerman was convicted only of voluntary manslaughter); *Standefer v. United States*, 447 U.S. 10, 25-26 (1980) (aiding and abetting defendant can permissibly be convicted even if principal was acquitted).  The state court's rejection of this claim was therefore reasonable, and is entitled to AEDPA deference.  Accordingly, this claim is DENIED.

### V.     Assistance of Trial and Appellate Counsel

Allen claims that trial and appellate counsel rendered ineffective assistance. Specifically, he contends that trial counsel failed to raise the constitutional issues discussed above regarding sentencing and jury instructions and failed to file a written motion to

13

suppress Allen's first statement on *Miranda* grounds. (Pet. Ex. F at 2–3.) He further contends that appellate counsel failed to raise trial counsel's ineffective assistance, jury misconduct, and the trial court's denial of his new trial motion without a hearing. (*Id*. at 4.)

These claims were raised only on collateral review to the state supreme court, which summarily denied them. When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state-court decision is objectively reasonable. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This "[i]ndependent review is not a *de novo* review of the constitutional issue, but rather, the only method by which [a federal court] can determine whether a silent state court decision is objectively unreasonable." *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

### A.     Trial Counsel

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, the petitioner must establish two factors. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *id.* at 687-68, "not whether it deviated from best practices or most common custom," *Richter*, 131 S. Ct. at 788 (citing *Strickland*, 466 U.S. at 690 ). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 787 (quoting *Strickland*, 466 U.S. at 689).

Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors,

the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (citing *Strickland*, 466 U.S. at 693). It is unnecessary for a federal court considering an ineffective assistance of counsel claim on habeas review to address the prejudice prong of the *Strickland* test if the petitioner cannot establish incompetence under the first prong. *Siripongs v. Calderon*, 133 F.3d 732, 737 (9th Cir. 1998).

The standards of both 28 U.S.C. § 2254(d) and *Strickland* are "highly deferential . . . and when the two apply in tandem, review is doubly so." *Richter*, 131 S. Ct. at 788 (quotation and citations omitted). "The question [under § 2254(d)] is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

As Allen's *Miranda*, jury instruction, and sentencing claims have all been considered and rejected, trial counsel's failure to raise them cannot be prejudicial. Accordingly, habeas relief is not warranted. This claim is DENIED.

### B. Appellate Counsel

Claims of ineffective assistance of appellate counsel are reviewed according to the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984). *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989). A defendant therefore must show that counsel's advice fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. *See id.* at 1434 n.9 (citing *Strickland*, 466 U.S. at 688, 694).

As any errors on the part of trial counsel were not prejudicial, appellate counsel's failure to raise claims of trial counsel's ineffective assistance logically cannot be prejudicial. Allen's motion for a new trial was based on claims of ineffective assistance of counsel at trial. (Pet., Ex F at 4.) As trial counsel's actions did not prejudice Allen, appellate counsel's failure to challenge the dismissal of this motion is not prejudicial. Allen's claim of jury misconduct is wholly unsupported or elaborated on in his petition, and as such, does not make a showing that appellate counsel's failure to raise the issue was prejudicial. (Pet. at 7.) Accordingly, habeas relief is not warranted here. This claim is DENIED.

## CONCLUSION

The state court's adjudication of Allen's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Ninth Circuit.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

**Dated:** December 12, 2013

_____
WILLIAM H. ORRICK
United States District Judge